IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RICE CORPORATION, d/b/a THE RICE COMPANY, a Delaware corporation, | |
| Plaintiff, | No. CIV S-06-1516 GEB DAD |
| v. | |
| GRAIN BOARD OF IRAQ, an Iraqi state company, and IRAQI MINISTRY OF TRADE, an Iraqi state agency, | ORDER AND |
| Defendants. | FINDINGS AND RECOMMENDATIONS |
| _____/ | |

      This matter came before the undersigned on the court's regularly scheduled law and motion calendar on November 30, 2007, for hearing of plaintiff's motion for default judgment against defendants Grain Board of Iraq and Iraqi Ministry of Trade.[1]  Adam C. Brown, Esq. appeared at the hearing on behalf of plaintiff.  No appearance was made by or on behalf of defendants.

---

[1] Defendants DOES 1 through 50, inclusive, were dismissed by the Honorable Garland E. Burrell, Jr. on September 14, 2007.  See Status (Pretrial Scheduling) Order filed Sept, 14, 2007, at 2.  Defendant Republic of Iraq was dismissed without prejudice by the Clerk of the Court on September 26, 2007, pursuant to plaintiff's notice of dismissal filed September 25, 2007.

At the conclusion of the hearing, plaintiff's counsel was granted leave to file a supplemental letter brief concerning the terms of the default judgment sought by plaintiff. Plaintiff filed such a brief on December 4, 2007, together with a revised proposed judgment.

Having heard oral argument and having now considered all written materials submitted in connection with plaintiff's motion, for the reasons stated on the record and set forth below, the undersigned recommends that plaintiff's motion be granted and that default judgment be entered in accordance with plaintiff's revised request.

## BACKGROUND

Plaintiff is a Delaware corporation authorized to do business in the State of California, where its principal place of business is located in Roseville. Plaintiff is a global exporter of agricultural commodities, primarily of products of U.S. origin, including rice, feed grains, and oilseeds.

Defendant Grain Board of Iraq is a state company, and defendant Iraqi Ministry of Trade is a state agency. The Grain Board operates under the Ministry of Trade as part of the food distribution system for the Republic of Iraq. As part of its duties, the Grain Board imports wheat, barley, and rice, and distributes these products to silos and warehouses within Iraq. In connection with these activities, defendants solicited business in the United States.

In 2005 plaintiff and defendants entered into a contract for the purchase and sale of rice to be delivered from Louisiana to Iraq. On July 7, 2006, plaintiff commenced this action with a complaint for damages and declaratory relief against defendants for their alleged wrongful rejection of the first shipment of rice delivered to Iraq pursuant to the parties' contract.

On November 10, 2006, plaintiff requested an order authorizing substitute service of process upon defendants by mail to post office boxes and by email. The district judge granted plaintiff's request on December 29, 2006. On May 23, 2007, plaintiff filed evidence that substitute service of process was effected on defendants on May 11, 2007.

/////

Although service of process was effected on defendants in accordance with the court's December 29, 2006 order, defendants failed to appear in this action. On August 27, 2007, the Clerk of the Court entered the default of both defendants pursuant to the request filed by plaintiff on August 15, 2007. On September 12, 2007, plaintiff filed a certificate of service reflecting that copies of plaintiff's request for entry of default and the Clerk's entry of default, in English and in Arabic translation, were served on defendants in the manner approved by the court for service of process. Subsequently, an amended certificate of service was filed with exhibits that include the Arabic translations.

On October 5, 2007, plaintiff filed its motion for default judgment, noticing it for hearing before the undersigned pursuant to Local Rule 72-302(c)(19). On November 1, 2007, plaintiff filed a certificate of service reflecting that the motion for default judgment and supporting documents, in English and in Arabic translation, were served on defendants in the manner approved for service of process.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for entry of default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944), and Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

The factual allegations of plaintiff's complaint, taken as true pursuant to the defendants' default, establish the following circumstances: In July 2005, plaintiff entered into a contract with defendant Grain Board for the purchase and sale of 60,000 metric tons of U.S. origin white long grain milled rice to be delivered in two shipments from Louisiana to Umm Qasr, Iraq; plaintiff chartered the M/V Alda to carry the first shipment of rice from Louisiana to Iraq; in August 2005, approximately 35,000 metric tons of white long grained milled rice within contract specifications was loaded aboard the M/V Alda; the rice was inspected by the USDA, and certificates of quantity and quality, attesting to the fitness of the rice for human consumption, were issued; prior to shipment, defendant Grain Board paid plaintiff approximately 12.7 million dollars by letter of credit for 85% of the first shipment, with the 15% balance to be paid on delivery; plaintiff obtained political risk insurance for the 15% balance in the event of a breach of contract by defendant Grain Board; on October 2, 2005, the first shipment arrived at Umm Qasr; defendant Grain Board rejected the shipment despite testing and certifications demonstrating that the rice met all specifications and was in good order and condition; defendant Grain Board ordered the M/V Alda to leave its berth at Umm Qasr; defendant Grain Board refused to pay the 15% balance due under the contract and demanded repayment of the 85% paid by letter of credit;

the M/V Alda remained anchored in the Persian Gulf for over 90 days while plaintiff made exhaustive but unsuccessful efforts to persuade defendant Grain Board to accept and permit discharge of the rice; defendant Grain Board rejected every effort made by plaintiff to re-deliver the rice aboard the M/V Alda; upon defendant Grain Board's indication that it would accept delivery of the cargo from a different vessel, plaintiff entered into an agreement with the owner of the M/V Alda to permit discharge of the rice at the alternative port of Dubai, United Arab Emirates; plaintiff paid for all discharge expenses in Dubai, paid the M/V Alda owner additional hire, and agreed to hold the M/V Alda owner harmless from any damages arising out of plaintiff's agreement to permit discharge of the cargo in Dubai without presentation of the original bills of lading; after the rice was discharged at Dubai, plaintiff had the rice bagged and then shipped about 13,000 metric tons of rice from Dubai to Umm Qasr aboard the M/V Jaipur; the M/V Jaipur arrived at Umm Qasr on February 2, 2006; defendant Grain Board refused, without explanation, to accept the rice; the M/V Jaipur returned to Dubai and unloaded the rice; plaintiff sold the rice to third parties at a substantial loss. (Compl. ¶¶ 8-15.)

Plaintiff's first claim is for declaratory relief under 28 U.S.C. §§ 2201 and 2202. Plaintiff seeks a judgment that plaintiff performed all conditions, covenants, and promises required to be performed by it under the contract, that defendant Grain Board improperly rejected the rice and thereby breached the parties' contract, that plaintiff properly took steps to mitigate its losses, and that defendant Grain Board is only entitled to the return of the monies it previously paid less the damages incurred by plaintiff in selling the cargo at a reduced price, as well as the transshipment costs, demurrage, additional hire, and other incidental and consequential damages incurred by plaintiff. (Compl. ¶¶ 20-24.) Plaintiff's second claim is for damages according to proof, in excess of $5,000,000. (Id. ¶¶ 25-28.). Plaintiff prays for a declaration of the parties' rights, duties, and responsibilities with respect to the contract, damages for breach of contract according to proof, incidental and consequential damages according to proof, and costs of suit. (Id. at 6-7.)

Plaintiff has also alleged that the forum selection clause contained in the parties' contract is not enforceable. (Id. ¶¶ 16-19.) The undersigned finds that defendants have waived any defense based on improper venue or enforcement of the contractual choice of forum clause. See Hoffman v. Blaski, 363 U.S. 335, 343 (1960) ("Of course, venue, like jurisdiction over the person, may be waived. A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."); King v. Russell, 963 F.2d 1301, 1305 (9th Cir. 1992) (holding that City defendants' failure to raise the defense of improper venue constituted a waiver of the defense); Teyseer Cement Co. v. Halla Maritime Corp., 794 F.2d 472, 477 (9th Cir. 1986) (observing that a defendant may waive objections to personal jurisdiction or venue by consent or by conduct). See also Fed. R. Civ. P. 12(b)(3) (listing improper venue as a defense that must be asserted in the responsive pleading or by motion) & 12(h)(1) (providing that a party waives the defense of improper venue by failing to make a motion or include the defense in a responsive pleading).

Defendants were properly served with process by substitute service, as authorized by the assigned district judge on December 29, 2006, when copies of the summons, complaint, and other documents were served by mail and by email on multiple addresses on May 11, 2007. Defendants' defaults were properly entered by the Clerk of the Court on August 27, 2007, more than 90 days after service. Defendants were also served with copies, in English and in Arabic translation, of plaintiff's request for entry of default, the clerk's entry of default, and plaintiff's motion for default judgment. Despite being served with all papers filed in connection with plaintiff's request for entry of default, entry of default by the Clerk, and plaintiff's motion for default judgment, neither defendant filed any written response to the complaint, the request for entry of default, or the motion for default judgment. Neither defendant appeared at the hearing on plaintiff's motion. Defendants have failed to participate in this action in any way.

After weighing the Eitel factors, the undersigned finds that the material allegations of the complaint support plaintiff's claims. Although the amount of money at stake is

large, plaintiff will be prejudiced if default judgment is denied because plaintiff will be without other recourse for recovery of the damages suffered due to defendants' breach of the contract.  In light of the entry of default against both defendants, there is no apparent possibility of a dispute concerning the material facts underlying the action.  Nor is there any indication that either defendant's default resulted from excusable neglect, where plaintiff served defendants with the complaint and summons, the request for entry of default, the Clerk's entry of default, and the motion for default judgment.  Defendants had ample notice of plaintiff's intent to pursue judgment against them.  Although public policy generally favors the resolution of a case on its merits, defendants' failure to appear and defend against plaintiff's claims has made a decision on the merits impossible in this case.  Because most of the Eitel factors weigh in plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the merits, will recommend that default judgment be entered against both defendants.

After determining that entry of default judgment is warranted, the court must next determine the terms of the judgment.  The parties' contract itself sets forth the terms agreed upon. (Decl. of Diego Garat in Supp. of Pl.'s Mot. for Entry of Default J. (Garat Decl.) ¶ 3 & Ex. A.)  The enforcement of the contract is governed by the United Nations Convention on Contracts for the International Sale of Goods, April 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 668 (1980), reprinted at 15 U.S.C. App. (Pl.'s Mot. for Entry of Default J. at 5.)  As set forth in plaintiff's motion, the Convention require the seller of goods to take all reasonable steps to preserve the cargo where the buyer has delayed taking delivery of the goods, permits the seller to store the goods at the expense of the buyer, and allows the seller to sell the goods if there is an unreasonable delay on the part of the buyer taking delivery.  (Id. at 8-10.)  In this case, plaintiff received $7,141,135.49 for the sale of the rejected rice at salvage.  (Garat Decl. ¶ 12.)

Plaintiff has provided evidence that expenses totaling $4,747,238.16 were incurred in preserving and ultimately selling at salvage the shipment of rice rejected by defendants.  (Garat Decl. ¶¶ 13-27 & Exs. F-T.)  In addition, plaintiff seeks $2,258,499.69 for the

balance that remained due after plaintiff drew upon defendants' letter of credit for the amount of $12,798,164.91 to pay for 85% of the first shipment of rice. (Garat Decl. ¶¶ 4-5 & Ex. C; Supplemental Decl. of Diego Garat ¶ 3 & Ex. 1.) Accordingly, plaintiff seeks damages of $7,005,737.85,[2] which is comprised of the 15% balance due under the contract, i.e., $2,258,499.69, and the total cost of all consequential and incidental damages arising from defendants' rejection of the rice, i.e., $4,747,238.16. Plaintiff also seeks its costs of suit, which total $10,491.06. This amount includes $8,721.10 for translation fees; $1,155.89 for copying fees; $297.57 for online research; $231.80 for postage; and $84.70 for Federal Express fees. (Supplemental Decl. of Adam C. Brown, Esq. in Supp. of Mot. for Entry of Default J. ¶ 10.)

The undersigned finds that plaintiff is entitled to the relief sought in the proposed order filed with the court on December 4, 2007.

Accordingly, IT IS ORDERED that:

1. Within thirty days after these findings and recommendations are filed by the Clerk of the Court, plaintiff shall serve copies of the findings and recommendations, in English and in Arabic translation, on defendants by mail and email at the addresses where service of process was effected;

2. Within five days after serving these findings and recommendations, plaintiff shall file a certificate of service; and

IT IS RECOMMENDED that:

1. Plaintiff's October 5, 2007 motion for default judgment be granted;

2. The court declare that plaintiff The Rice Corporation d/b/a The Rice Company performed all obligations required to be performed by it under contract number MOT/GB/R3/1/2005 and that defendants Grain Board of Iraq and Iraqi Ministry of Trade improperly rejected the cargo at issue in this action;

---

[2] Plaintiff's proposed orders request total damages of $7,005,737.75. The sum of $2,258,499.69 and $4,747,238.16 is $7,005,737.85.

3. The court enter judgment in favor of plaintiff against defendants in the sum of $7,005,737.85, consisting of $2,258,499.69 for the 15% balance due and owing by defendants to plaintiff under contract number MOT/GB/R3/1/2005 and $4,747,238.16 for incidental and consequential damages, consisting of expenses incurred for demurrage and additional expenses charged by the owners of the M/V ALDA, as well as expenses incurred for discharging, storage, segregation, attempted re-shipment, and re-sale fees, all arising from defendants' wrongful refusal to permit the cargo to discharge in Umm Qasr;

4. The court declare that plaintiff is entitled to retain and dispose of the $12,798,164.91 previously paid by defendants by letter of credit in partial satisfaction of and pursuant to contract number Mot/GB/R3/1/2005; and

5. The court order that defendants shall pay plaintiff's costs of suit in the amount of $10,491.06.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be served within fifteen (15) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 19, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.civil\ricecorp1516.mdj.f&r