1

2

3

4              IN THE UNITED STATES DISTRICT COURT

5           FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7  THE RICE CORPORATION,              )
                                      )
8              Plaintiff,             )    2:06-cv-01516
                                      )
9       v.                            )    ORDER*
                                      )
10 GRAIN BOARD OF IRAQ and IRAQI      )
   MINISTRY OF TRADE,                 )
11                                    )
               Defendants.            )
12 _____)

13          On May 1, 2009 Defendant Grain Board of Iraq ("GBI") filed a

14 motion for dismissal of Plaintiff's Complaint under Federal Rules of

15 Civil Procedure ("Rule") 12(b)(3) in which it argues venue is improper

16 since a forum selection clause exists in the contract into which

17 Plaintiff entered with GBI making Iraq the only forum for litigation;

18 or alternatively, that venue be changed to Iraq because of forum non

19 conveniens.  Defendant Iraqi Ministry of Trade ("MOT") joined in GBI's

20 motion and separately moves for dismissal of Plaintiff's Complaint

21 under Rule 12(b)(1) for lack of subject matter jurisdiction, and under

22 Rule 12(b)(6) for failure to state a claim upon which relief can be

23 granted.  Plaintiff opposes the motions, and filed a motion for

24 disqualification of Defendants' counsel for violation of Plaintiff's

25 attorney-client privilege on June 22, 2009.

26

27 _____

28     *    This matter was determined to be suitable for decision without
   oral argument.  E.D. Cal. R. 78-230(h).

1

Since Defendants' Rule 12(b)(3) motion for improper venue will be granted, the remaining motions need not be addressed.

## BACKGROUND

The contract into which Plaintiff and GBI entered, which is the basis for all Plaintiff's claims in Plaintiff's complaint, includes a dispute resolution clause designating Iraq as the forum for resolution of any dispute relating to the contract. All claims in Plaintiff's complaint concern Plaintiff's delivery of 60,000 metric tons of rice to Umm Qasr, Iraq, which Plaintiff alleges was wrongfully rejected. Plaintiff alleges in paragraph 18 of its complaint that the contract contains the following unenforceable forum selection clause in the section entitled "ARBITRATION":

> The event (sic) of any disputs (sic) arising
> between the parties of this agreement in respect of
> their rights and obligations (sic) which can not be
> settled amicably such dispute shall be settled by
> Iraqi court according to Iraqi laws and regulations
> and their decision (sic) shall be final and
> conclusive and binding on both parties.

(Compl. ¶ 16.)(quotations omitted).

Plaintiff alleges this clause is "unenforceable" and "unreasonable" because Iraq is "a seriously inconvenient forum" since "Plaintiff will be hard-pressed to convince . . . witnesses to travel to Iraq;" the Iraqi judiciary is flawed and corrupt; and, an Iraqi forum would deprive Plaintiff of a "meaningful day in court" and subject Plaintiff to a "pervasive climate of violence." (Compl. ¶¶ 18, 19.)

## STANDARD

Since forum selection "clauses are prima facie valid," the party opposing enforcement of a forum clause bears the burden of

making a "strong showing that [the clause] should be set aside." M/S
Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972).  "Under the
Supreme Court's standard for resolving motions to dismiss based on a
forum selection clause, the pleadings are not accepted as true, as
would be required under a Rule 12(b)(6) analysis." Arqueta v. Banco
Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  "Analysis under
Rule 12(b)(3) . . . permits the district court to consider facts
outside of the pleadings . . . ." Id.

        Plaintiff supports its position with Sabah Al-Mukhtar's
("Al-Mukhtar") declaration, who is an admitted Iraqi attorney and a
partner at a law firm in Baghdad, Iraq, and Plaintiff's attorney Janet
K. Haines's ("Haines") declaration and supplemental declaration.
Defendants argue Al-Mukhtar lacks personal knowledge and expertise to
declare about the current situation in Iraq since he has lived in
London for the past 29 years.  Defendants also object to Haines'
declarations, and the exhibits attached thereto of news articles
concerning the political atmosphere and security situation in Iraq,
the United States State Department's ("State Department") 2008 Country
Report on Human Rights Practices in Iraq, and a State Department May
2009 Travel Warning concerning Iraq.  Defendants argue these exhibits
should be excluded since Haines lacks personal knowledge of the
content of the exhibits, and the exhibits are irrelevant since they do
not address the current situation in Iraq or the Iraqi judiciary.
These objections only concern the probative value of the declarations,
which is reflected in the discussion below.

///

///

///

3

1                         **DISCUSSION**

2   **I.  The Forum Selection Clause is Mandatory and Exclusive**

3          "A contractual forum selection clause is prima facie valid

4   and should be enforced unless enforcement is shown by the resisting

5   party to be unreasonable under the circumstances."  <u>Docksider, Ltd.

6   v. Seat Tech. Ltd.</u>, 875 F.2d 762, 763 (9th Cir. 1989)(internal

7   citation and quotations omitted).  Plaintiff argues the forum

8   selection clause need not be enforced since language in the clause

9   shows the parties did not make the Iraqi forum the only forum for

10  resolving disputes.

11         "The prevailing rule is clear . . . that where venue is

12  specified with mandatory language the clause will be enforced." <u>Id.</u>

13  The forum selection clause at issue states:

14              The event (sic) of any disputs (sic) arising
                between the parties of this agreement in respect of
15              their rights and obligations (sic) which can not be
                settled amicably such dispute shall be settled by
16              Iraqi court according to Iraqi laws and regulations
                and their decision (sic) shall be final and
17              conclusive and binding on both parties.

18  (Compl. ¶ 16.)(quotations omitted).  This clause selects Iraqi as the

19  forum for resolving the disputes alleged in Plaintiff's complaint.

20  <u>See</u> <u>Radian International, LLC v. Alpina Insurance Company</u>, No C-04-

21  4537 SC, 2005 WL 1656884, at *2 (N.D. Cal. July 14, 2005)(finding "any

22  resolution to a dispute . . . shall be held in Beirut, Lebanon" to be

23  mandatory and exclusive).

24         Plaintiff also argues the clause only applies to

25  arbitration since "Arbitration" is the title used for the clause in

26  paragraph 18 of the Contract and since the clause includes the word

27  "settled."  (Pl's Opp'n 10:7-23.)  Alternatively, Plaintiff argues the

28  reference to arbitration renders the clause ambiguous.

                                    4

1      However, the clause states if a dispute cannot be settled,

2  "it shall be settled by Iraqi court" and that the decision rendered in

3  that court "shall be final and conclusive and binding on both

4  parties."  This language negates any inference that the clause applies

5  only to arbitration.  Further, if the clause did not apply to judicial

6  proceedings, the clause could not be enforced by an Iraqi court as

7  stated in the clause.  See Agrocomplect, AD v. Republic of Iraq, 524

8  F. Supp. 2d 16, 33 (D.D.C.  2007) (interpreting an arbitration clause

9  designating Iraqi law and jurisdiction to apply to judicial decisions

10 because "the Arbitration clause could not be enforced without a

11 judicial proceeding, and both Iraqi law and the Contract itself

12 mandated that the judicial proceeding take place in Iraq.")  Moreover,

13 the use of the word "any" before the phrase "dispute arising between

14 the parties of this agreement" clarifies that the clause applies to

15 all disputes arising between the parties.  Therefore, Plaintiff's

16 arguments are unpersuasive.

17 **II.  The Forum Selection Clause is Enforceable**

18     Plaintiff also argues the clause is void because it is

19 unreasonable and unenforceable.  "The enforceability of forum

20 selection clauses in international agreements is controlled by the

21 Supreme Court's decision in Bremen [407 U.S. 1 (1972)]."  Arqueta, 87

22 F.3d at 324-25.  "Forum selection clauses . . . are enforceable absent

23 a strong showing by the party opposing the clause that enforcement

24 would be unreasonable or unjust, or that the clause is invalid for

25 such reasons as fraud or overreaching."   Manetti-Farrow, Inc. v.

26 Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988)(Cite and

27 quotations omitted).

28

> The Supreme Court, has construed this exception [to enforcement] narrowly.  A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court," or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.  To establish the unreasonableness of a forum selection clause, [Plaintiff has] the "heavy burden" of showing that trial in the chosen forum would be so difficult and inconvenient that [Plaintiff] would effectively be denied a meaningful day in court.

Argueta, 87 F.3d at 325 (Cites and quotations omitted).

Plaintiff alleges in its Complaint that the forum selection clause is unreasonable because witnesses will be unwilling to travel to Iraq, the Iraqi judiciary is flawed, and the 2005 Country Report on Human Rights Practices deems Iraq an unfit venue to litigate this matter, which would ultimately deny Plaintiff "its meaningful day in court." (Compl. ¶¶ 18, 19.)  Plaintiff also alleges the contract is "subject to the terms of the United Nations Convention on Contracts for the International Sale of Goods" ("UNCCISG"). (Compl. ¶ 17.)  The allegation that the UNCCISG is controlling is incorrect.  The UNCCISG concerns the formation of contracts and does *not* explicitly address "the validity of the contract or any of its provisions of any usage." United Nations Convention on Contracts for the International Sale of Goods, Article 4(a), G.A. Res. 35/51, ¶ 2, U.N. DOC. A/RES/35/51 (Jan. 1, 1988).

Plaintiff alleges an "overwhelming majority, if not all, of the witnesses are located in the United States and outside of Iraq;" and that Plaintiff "will be hard-pressed to convince any of its witnesses to travel to Iraq" due to the "security situation." (Pl's

Opp'n 15:25-27; Compl. ¶ 19.)  Further, Plaintiff argues that "substantial performance of the contract, including execution of the transaction, organization of logistics, purchase of supply and virtually all other activities related to the contract occurred in Plaintiff's Roseville office."  (Pl's Opp'n 15:26-16:2.)

> [However,] where it can be said with reasonable assurance that at the time [the parties] entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable.

Bremen, 407 U.S. at 16.  "The remoteness of the forum might suggest that the agreement was an adhesive one, or that the parties did not have a particular controversy in mind when they made their agreement; yet even there the party claiming should bear a heavy burden of proof."  Id. at 17.  "Whatever 'inconvenience' [Plaintiff] would suffer by being forced to litigate in [Iraq] as it agreed to do was clearly foreseeable at the time of contracting . . . .  Absent [showing that Plaintiff will for all practical purposes be deprived of its day in court], there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold [Plaintiff] to [its] bargain."  Id. at 17-18.  Moreover, since the clause mandates that Iraqi law controls, "it is unclear to the Court why a large number of legal professionals would even need to visit [Iraq,] . . . [since] presumably, local counsel is most knowledgeable about [Iraqi] law."  Radian, 2005 WL 1656884, at *3.  Plaintiff has not shown that Iraq as a forum would be so seriously inconvenient that Plaintiff would "effectively be denied a meaningful day in court."  Arqueta, 87 F.3d at 325.

1       Plaintiff also argues Iraq is a "gravely difficult" forum,

2  citing news articles concerning the political environment and security

3  situation in Iraq, the State Department's 2008 Country Reports on

4  Human Rights Practices in Iraq ("2008 Iraq Report"), and a State

5  Department May 2009 Travel Warning concerning Iraq.  (Haines

6  Declaration, Ex. A, B; Haines Supplemental Declaration.)  Essentially,

7  Plaintiff argues that recent events in Iraq render Iraq an unstable

8  and unsafe forum that will deny Plaintiff a trial.  This argument,

9  however, "does not comport with Plaintiff's ready agreement to the

10  clause when the clause was signed."  Radian, 2005 WL 1656884, at *3.

11  This "Court does not agree that the current situation is so different

12  that the Court should decline to enforce a clause which Plaintiff

13  readily agreed to in [2005]."  Id.

14       Further, Plaintiff's general reference to the 2008 Iraq

15  Report provides "an insufficient basis for . . . holding that the

16  courts of [Iraq] are an inadequate forum in this civil case."  Tuazon

17  v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1179 (9th Cir. 2006).

18  The "State Department Country Reports [, by themselves, referencing]

19  corruption, judicial bias and inefficiency . . . [are] insufficient"

20  to render a foreign forum inadequate.  Id.  Likewise, "a travel

21  warning by itself does not make litigation in a particular country per

22  se unreasonable."  Radian, 2005 WL 1656884, at *3.

23       Plaintiff also relies on Declarations by Haines and Al-

24  Mukhtar, in which Haines and Al-Mukhtar discuss the warrant for arrest

25  of GBI director Muthanna Jabbar on corruption charges. (Pl's. Opp'n

26  12:19-22, Haines Declaration, Ex. H, 1.)  Plaintiff, however, does not

27  explain how this arrest warrant would affect litigating its case in

28  Iraq.

1    Plaintiff also relies on Al-Mukhtar's Declaration to show

2    that currently Iraqi judges are "partial to parties depending on

3    politics, ethnicity, or sectarian background . . ." and that

4    "[c]orruption in Iraq has never been so wide spread as it is now."

5    (Al-Mukhtar Decl. ¶¶ 12(g), 13(a)-(c)).  Al-Mukhtar, however, concedes

6    that "for the last 29 years [he has] been practicing as a legal

7    consultant in London advising on Iraqi, Arab, and Islamic law." (Al-

8    Mukhtar Decl. ¶ 2.)  Al-Mukhtar also concedes he no longer visits

9    Iraq; he states he "made regular visits to Iraq until it became unsafe

10   to do so." (Al-Mukhtar Decl. ¶ 2.)  Therefore,  Al-Mukhtar has not

11   shown he is aware of the present Iraqi judicial system.  Moreover, Al-

12   Mukhtar's declaration that corruption is rampant in Iraq is based on

13   an International Transparency Report attached to his declaration as

14   Appendix IV, which is illegible.

15   Al-Mukhtar also declares that a "major obstacle [in Iraq] is

16   lack of security" and the "dismissal of the judges by Paul Bremer has

17   dramatically destroyed the ability [] of the courts to function." (Al-

18   Mukhtar Decl. ¶ 12(a).)  This statement, however, is based on the

19   dismissal of judges that occurred in 2003, roughly six years ago.  Al-

20   Mukhtar also declares that Plaintiff "would have no opportunity to

21   enforce a judgment against the defendants, as governmental entities

22   are completely immune to the enforcement of judgments." (Al-Mukhtar

23   Decl. ¶ 13.)  However, no foundation is provided for this conclusion.

24   Al-Mukhtar also declares that "more than 40 lawyers" and

25   "more than 30 judges in two years (2005-2007)" have been murdered in

26   Iraq. (Al-Mukhtar Decl. ¶ 12(f).)  This declaration, however, is made

27   without reference to any source or specific date.  Further, this

28   averment is not compatible with the following information in a

9

Department of Justice fact sheet, dated February, 13, 2008, which is referenced in Al-Mukhtar's Declaration:

> The [U.S. Marshals Service] has provided safe housing for Iraqi judges, security for high profile prisoners awaiting trial, safe houses and secure courthouses, and implemented a witness security program for Iraqi trials. . . . U.S. Deputy Marshals have conducted numerous courthouse security assessments, advising Iraqis on procedures and technologies that will improve the safety of civil and criminal courts throughout Iraq . . . . In February 2007, the Justice Department and the [Multi-National Forces-Iraq] formed the Law and Order Task Force [("LAOTF")], which is head-quartered in a secure compound located in Baghdad, just outside of the International Zone . . . . The task force . . . consists of . . . civilian and military attorneys, paralegals, and criminal investigators who train, mentor, and assist Iraqi police and judges to reform, strengthen and expand the rule of law . . . . The LAOTF compound also provides secure housing for judges and a secure courthouse allowing members of the Iraqi judiciary to adjudicate cases in a safe environment.

(Al-Mukhtar Decl., Appendix III, 2-3.)  Therefore this portion of Al-Mukhtar's declaration is unpersuasive.

Plaintiff also argues that "five separate Iraqi experts [retained] to opine . . . [that] the situation in Iraq would prevent a fair trial . . . refused to sign [declarations], citing fears of retaliation by the government against themselves and their families." (Pl's Opp'n 22:18-25.)  Plaintiff relies on a Declaration by Adel Aldhahab ("Aldhahab") as support for this proposition. (Pl's Opp'n 22:25-26).  Aldhahab is a Yemeni attorney who has "dealt with many Iraqi cases" and who is "updated and aware of the current situation in Iraq."  (Aldhahab Declaration 2.)  Aldhahab was approached by a law firm counseling Plaintiff's law firm and asked "to provide an expert report about the capability of Iraqi judicial system at the present time regarding [Plaintiff's] chances of obtaining a fair trial in

Iraq.  Acting as the coordinator of this project, [Aldhahab] contacted several experts." (Aldhahab Declaration 2.)  Aldhahab discusses only two experts in his declaration, not five as Plaintiff suggests; and, Aldhahab declares that "fear of the general situation in Iraq" and "fear [of] losing [a] job at the Iraqi government bank" prevented these experts from signing declarations. (Aldhahab Declaration 2.)

Defendants object, arguing this portion of Aldhahab's declaration is hearsay and inadmissible, because Aldhahab bases this portion of his declaration on information he received from "his partner."  (Defendant's Objection to Aldhahab Declaration 5; Aldhahab Declaration 2.)  Evidence concerning these two individuals, however, and the other evidence Plaintiff presents, does not show Iraqi is an unreasonable forum for resolving Plaintiff's breach of contract issues.

Plaintiff also argues that Iraq lacks judicial procedure, because Plaintiff would not be allowed "something as simple as court transcripts," or the use of evidence and discovery.  (Pl's Opp'n 24:5-9.)  Plaintiff bases this argument on news articles and a "Working Draft" of U.S. Embassy Report issued in 2007.  (Haines Declaration, Ex. J; Ex. K.)  However, Plaintiff presumably should have known about these judicial features before it agreed to select Iraqi as the litigation forum in 2005.

Lastly, Plaintiff argues that "if this case were . . . litigated in Iraq, the parties would incur substantial expense translating all the documents into Arabic."  (Pl's Opp'n 27:25-28:2.)  This argument also fails to show Iraq is an unreasonable forum since it is presumed Plaintiff was aware of this potential expense when Iraqi was selected as the litigation forum.

1    Therefore, Plaintiff has its burden of showing that the

2  forum in Iraq would be so "gravely difficult and inconvenient" that

3  Plaintiff "will for all practical purposes be deprived of its day in

4  court." <u>Bremen</u>, 407 U.S. at 18.

5                              **CONCLUSION**

6    For the foregoing reasons, Defendants' motion for improper

7  venue is **GRANTED** and Plaintiff's Complaint is dismissed without

8  prejudice.

9  Dated:  October 26, 2009

10

11  _____
   GARLAND E. BURRELL, JR.

12  United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28